# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| ARXX CORPORATION, *et al.*,[1] | Case No. 13-13313 (KJC) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |
| | Ref. Docket Nos. 22, 32, and 36 |

### ORDER, PURSUANT TO SECTIONS 105(a), 363, 1501, AND 1521 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, AND 9014, (I) RECOGNIZING AND ENFORCING THE STALKING HORSE ORDER AND VESTING ORDER; (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ARXX DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of Duff & Phelps Canada Restructuring Inc., in its capacity as the court-appointed receiver and authorized foreign representative (the "**Receiver**") for the above-captioned debtors (collectively, the "**ARXX Debtors**") in the proceeding (the "**Canadian Proceeding**") commenced under Canada's *Bankruptcy and Insolvency Act* (Canada), R.S.C. 1985, c. B-3 (the "**BIA**"), as amended, and pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**"), for the entry of an order, pursuant to sections 105(a), 363(b), (f), (m), and (n), 1501, and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: ARXX Corporation (3572); ARXX Building Products Inc. (3569); ARXX Building Products U.S.A. Inc. (1061); ECB Holdings, LLC (3572); APS Holdings, LLC (3572); Unisas Holdings, LLC (3572); and Eco-Block International, LLC (3572). The ARXX Debtors' executive headquarters is located at 800 Division Street, Cobourg, ON, Canada K9A 5V2.

[2] Capitalized terms used, but not otherwise defined herein, have the meaning given to them in the Motion.

and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"): (a) recognizing and enforcing the Stalking Horse Order and the Vesting Order, pursuant to which the Ontario Court authorized the sale and transfer (the "**Sale**") by the Receiver of the ARXX Debtors' right, title, and interest in and to the assets (collectively, the "**Purchased Assets**") described in that certain *Asset Purchase Agreement* (the "**Purchase Agreement**"), between the Receiver and Airlite Plastics Co. (the "**Airlite**"), dated December 19, 2013 (a copy of which is attached to the Motion as Exhibit B), to Airlite, or such other purchaser that has submitted a superior bid, free and clear of all claims, liabilities, and encumbrances, except as set forth in the Purchase Agreement; (b) authorizing, pursuant to section 363 of the Bankruptcy Code, the Sale of the ARXX Debtors' right, title, and interest in and to the Purchased Assets to Airlite, or such other purchaser that has submitted a superior bid, free and clear of all Interests (as defined herein), except as otherwise provided in the Purchase Agreement; and (c) granting certain related relief.; and this Court having entered the *Order Granting Recognition and Related Relief* (the "**Recognition Order**"); and upon the Vesting Order, which was entered by the Ontario Court on January 29, 2014 [Docket No. 36], the Receiver's Report, and the *Second Report of Duff & Phelps Canada Restructuring Inc. as Receiver of ARXX Building Products Inc., ARXX Building Products U.S.A. Inc., ARXX Corporation, ECB Holdings, LLC, APS Holdings, LLC, Unisas Holdings, LLC and Eco-Block International, LLC*, dated January 22, 2014 [Docket No. 32] (the "**Second Receiver's Report**"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the recognition and enforcement of the Stalking Horse Order[3] and the Vesting Order and the approval of the Purchase Agreement and transactions contemplated thereby; and

---

[3] The Stalking Horse Order is attached as Tab D to the Second Receiver's Report [Docket No. 32].

the Canadian Court having entered the Stalking Horse Order and Vesting Order; and this Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at a hearing before this Court (the "Sale Hearing"); and upon the record of the Sale Hearing and the Chapter 15 Cases, and after due deliberation thereon, and good cause appearing therefor, and in accordance with Bankruptcy Rule 7052, it is hereby

**FOUND AND DETERMINED THAT**:

A. The Canadian Court has duly entered the Stalking Horse Order and Vesting Order: (i) approving and authorizing the Receiver's execution of the Purchase Agreement, the Stalking Horse Process, and consummation of the sale of the Purchased Assets free and clear of all Interests; and (ii) requesting aid and recognition from this Court to give effect to the Stalking Horse Order and Vesting Order.

B. This Court has jurisdiction and authority to hear and determine the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b), section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. Venue of these chapter 15 cases and the Motion in this Court and this District is proper under 28 U.S.C. § 1410(3) because placing venue in this District will be consistent with the interests of justice and convenience for the ARXX Debtors, having regard to the relief sought by the Receiver..

C. Based on the affidavits of service filed with, and representations made to, this Court: (i) notice of the Motion, the Sale Hearing, and the Sale was proper, timely, adequate, and sufficient under the circumstances of these Chapter 15 Cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy

Rules; and (ii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the entry of this Order is necessary or shall be required.

D. The Receiver provided a reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein to the necessary parties in interest, including the following: (i) all known creditors of the ARXX Debtors or holders of Interests; (ii) all parties to litigation pending in the United States in which the ARXX Debtors are a party as of the Petition Date; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the United States Attorney's Office for the District of Delaware; (v) the Internal Revenue Service; (vi) the United States Department of Justice; (vii) counsel for Airlite; (viii) counsel to Comerica; (ix) all persons or entities known to have liens on the Purchased Assets; (x) all parties that expressed an interest in the ARXX Debtors as a result of the prepetition marketing process; and (xi) all other persons to whom notice is required pursuant to this Court's *Order Specifying Form and Manner of Service of Notice* [Docket No. 16].

E. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F. The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policy of the United States, is warranted pursuant to sections 105(a), 363(b), (f), (m), and (n), 1501, and 1521 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

G. Based on information contained in the Receiver's Report and the Moore Affidavit, the ARXX Debtors conducted a prepetition marketing process to solicit interest to refinance and/or acquire the ARXX Debtors' business and assets. The Receiver has

recommended the Sale in accordance with the Purchase Agreement. It is appropriate that the Purchased Assets be transferred, assigned, and vested in the Purchaser.

H. The consideration provided by the Purchaser for the Purchased Assets is the highest or otherwise best offer.

I. The Purchase Price constitutes fair consideration and reasonably equivalent value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

K. Time is of the essence in consummating the Sale. To maximize the value of the Purchased Assets, it is essential that the Sale occur promptly. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rule 6004.

L. Based upon information contained in the Receiver's Report, the negotiations over the terms of the Purchase Agreement were conducted fairly, in good faith, and without collusion, and thus the Purchaser has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code, and neither the Receiver nor the Purchaser engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

M. Neither the Purchaser nor any of its affiliates or their respective representatives is an "insider" of any of the ARXX Debtors, as that term is defined in Bankruptcy Code section 101(31).

N. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the ARXX Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

O. The Receiver may sell the Purchased Assets free and clear of all Interests, to the extent provided in the Purchase Agreement, the Stalking Horse Order, the Vesting Order, and this Order, because, with respect to each creditor asserting an Interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code section 363(f)(2).

P. The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the ARXX Debtors, their creditors, and other parties in interest if either: (i) the sale of the Purchased Assets to the Purchaser was not free and clear of all Interests, except as otherwise provided in the Purchase Agreement; or (ii) the Purchaser would, or in the future could, be liable for any of such Interests or any claims against the ARXX Debtors based upon successor or vicarious liability or otherwise, except as provided in Purchase Agreement.

Q. A sale of the Purchased Assets other than one free and clear of all Interests, except as otherwise provided in the Purchase Agreement, would yield substantially less value than the Sale; thus, the Sale free and clear of all Interests, in addition to all of the relief provided herein, is in the best interests of the ARXX Debtors, their creditors, and other parties in interest.

R.    All findings of fact and conclusions of law announced by this Court at the Sale Hearing are incorporated herein.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    The Motion is granted.

2.    The Stalking Horse Order and Vesting Order, copies of which are annexed hereto as <u>Exhibit 1</u> and <u>Exhibit 2</u>, respectively, are recognized in full and given full force and effect in the United States.

3.    The Sale pursuant to the terms of the Purchase Agreement and the transfer and assignment of the Purchased Assets located within the United States is approved and authorized pursuant to sections 363 and 1521 of the Bankruptcy Code.

4.    All objections to the entry of this Order that have not been withdrawn, waived, settled, or otherwise resolved pursuant to the terms hereof, are denied and overruled on the merits, with prejudice.

5.    Pursuant to sections 105, 363, and 1521 of the Bankruptcy Code, and to the extent permitted by the Stalking Horse Order and the Vesting Order, each of the ARXX Debtors, the Purchaser, and the Receiver are authorized to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Purchased Assets to the Purchaser in accordance with the Purchase Agreement, the Stalking Horse Order, the Vesting Order, and this Order; and (b) perform, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.

**Transfer of the Purchased Assets**

6.    Pursuant to sections 105(a), 363(f), and 1521 of the Bankruptcy Code, and as provided for in the Vesting Order, upon the delivery of a Receiver's certificate to the

Purchaser substantially in the form attached as Schedule A to the Vesting Order (the "**Receiver's Certificate**"), all of the ARXX Group's right, title, and interest in and to the Purchased Assets described in the Purchase Agreement, shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts, or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered, or filed and whether secured, unsecured, or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Receiver Order; (ii) all charges, security interests, or claims evidenced by registrations pursuant to the Personal Property Security Act (Ontario) or any other personal property registry system; and (iii) those Claims listed on Schedule B to the Vesting Order (the "**Encumbrances**", and all the foregoing in this paragraph 6, collectively, the "**Interests**"). For the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Purchased Assets shall stand in the place and stead of the Purchased Assets, and that from and after the delivery of the Receiver's Certificate all Claims and Encumbrances shall attach to the net proceeds from the sale of the Purchased Assets with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

7. Except as otherwise provided in the Purchase Agreement, any and all Purchased Assets and in the possession or control of any person or entity, including, without limitation, any vendor, supplier, or employee of the ARXX Debtors shall be transferred to the Purchaser free and clear of all Interests, and, upon reasonable request of the Purchaser, all such

persons or entities are directed to surrender possession of the Purchased Assets to the Purchaser at the Closing Date.

8. To the extent permissible under the Stalking Horse Order and the Vesting Order, the Purchaser, or its affiliates, members, and shareholders, shall not be deemed, as a result of any action taken in connection with the Sale or the Purchaser's post-closing use or operation of the Purchased Assets, to: (a) be a successor to the ARXX Debtors; (b) have, *de facto* or otherwise, merged or consolidated with or into the ARXX Debtors; or (c) be a continuation or substantial continuation of the ARXX Debtors or any enterprise of the ARXX Debtors.

9. The entry of this Order: (a) is and shall be effective as a determination that, upon the Closing Date, except as expressly provided in the Purchase Agreement, the Stalking Horse Order, the Vesting Order, and/or this Order, all Interests existing as to the Purchased Assets prior to the Closing Date, have been released, extinguished, expunged, and discharged as against the Purchased Assets; and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all Interests, except as expressly provided in the Purchase Agreement, the Stalking Horse Order, the Vesting Order, and/or this Order.

10. Each and every federal, state, and local governmental agency or department is authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Purchase Agreement.

11. Except with respect to enforcing the terms of the Purchase Agreement, the Stalking Horse Order, the Vesting Order, or this Order, absent a stay pending appeal, no person shall take any action to prevent or enjoin or otherwise interfere with consummation of the transaction contemplated in or by the Purchase Agreement.

12. Effective as of the Closing Date, the Stalking Horse Order, the Vesting Order and this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the ARXX Debtors' interests in the Purchased Assets.

**Additional Provisions**

13. The Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless, prior to the Closing Date, such authorization is duly stayed pending appeal.

14. The terms and provisions of the Purchase Agreement and this Order shall be binding on and inure to the benefit of the ARXX Debtors, the Purchaser, the ARXX Debtors' creditors, and all other parties in interest, and any successors of the ARXX Debtors, the Purchaser and the ARXX Debtors' creditors, including any trustee(s), examiner(s), or receiver(s) appointed in these cases or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the ARXX Debtors, the ARXX Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

15. Subject to the terms and conditions of the Stalking Horse Order, the Vesting Order, and the Purchase Agreement, provisions of the Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement among the ARXX Debtors and the Purchaser in a writing signed by the ARXX Debtors and the Purchaser without further action or order of this Court.

16. The failure to include any particular provision of the Stalking Horse Order, the Vesting Order, the Purchase Agreement, or any related agreements in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of this Court that the Stalking Horse Order, the Vesting Order, the Purchase Agreement, and any related agreements, with such amendments thereto as may be made by the parties in accordance with the Stalking Horse Order, the Vesting Order, and the Purchase Agreement be approved and authorized in their entirety.

17. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the ARXX Debtors, the Purchaser, and the Receiver are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the ARXX Debtors, the Purchaser, and the Receiver may, in their discretion and without further delay, take any action and perform any act authorized under the Stalking Horse Order, the Vesting Order, and/or this Order.

18. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 15 Cases or the consummation of the Sale.

19. Nothing in this Order shall be deemed to waive, release, extinguish, or estop the ARXX Debtors or the Receiver from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset that is not a Purchased Asset.

20. The provisions of this Order are nonseverable and mutually dependent.

21. Other than as explicitly set forth herein, this Court shall retain jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order.

Dated: January 31, 2014
       Wilmington, Delaware

_____
Kevin J. Carey
United States Bankruptcy Judge